**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:**

IN RE:

APPLICATION OF IGT, NICK KHIN, DREW
KELLEY, AND DAVID FLINN PURSUANT
TO 28 U.S.C. § 1782 TO CONDUCT DISCOV-
ERY FOR USE IN FOREIGN PROCEEDINGS

**Filing Under Seal NOT Requested**

---

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR
JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE FOR USE IN
A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

i

**Table of Contents**

I.  INTRODUCTION ............................................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................................... 3

    A.  The Underlying Commercial Dispute ............................................................... 4

    B.  The Peruvian Criminal Proceeding .................................................................. 5

    C.  The Contemplated Civil Proceeding ................................................................ 7

    D.  Discovery Sought ............................................................................................ 8

III.  ARGUMENT ................................................................................................................ 10

    A.  Legal Standard ............................................................................................... 11

    B.  The Statutory Requirements of 28 U.S.C. § 1782 Are Satisfied. ................... 11

    C.  The Discretionary Considerations of § 1782 Favor Granting the Application ............... 14

        1.  Applicants Seek Discovery From Non-Parties To The Foreign Proceeding .......... 15

        2.  The Peruvian Courts Are Receptive to U.S. Judicial Assistance ........................... 16

        3.  Applicants Are Not Circumventing Foreign Proof Gathering Restrictions .......... 17

        4.  Applicants' Requested Discovery Is Not Overly Burdensome ............................... 18

    D.  The Application Is Properly Made *Ex Parte* ................................................. 19

IV.  CONCLUSION .............................................................................................................. 19

## Table of Authorities

**Cases**

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014) ............................................................... passim

*Application of Malev Hung. Airlines*, 964 F.2d 97 (2d. Cir. 1992) ............................................. 17

*Brandi-Dohrn v. 1KB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........................ 11

*Campos-Álvarez v. Newmont Mining Corp.*, No. 1:14–cv–00208–REB, 2016 WL 9725290 (D. Col. Sept. 27, 2016) ............................................................................................... 13, 17, 18

*Consorcio Minero S.A. v. Doe Run Resources Corp.*, No. 4:11–MC–583 (CEJ), 2011 WL 4550200 (E.D. Mo. Sept. 30, 2011) ............................................................................ 13, 17, 18

*Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019) .............................................. 16

*Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995) ............................................. 16

*Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015) ................................................................ 10

*Gyptec, S.A. v. Hakim-Daccach*, No. 16- 20810-CIV, 2017 WL 6557425 (S.D. Fla. Sept. 27, 2017) ........................................................................................................................ 19

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) ..................................................... 12

*In re Application of Bracha Found.*, 663 Fed. App'x. 755 (11th Cir. 2016) ......................... 13, 17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ............................................................................... 16, 18

*In re Application of Imanagement Servs. Ltd.*, No. Civ.A. 05–2311(JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006) .................................................................................................... 16

*In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08–20378–MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ............................................................... 11

*In re Bayer*, 146 F.3d 188 (3d Cir. 1998) ......................................................................... 11, 18

*In re Bernal*, No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ....................... 12

*In re Bio Energias Comercializadora de Energia Ltda.*, No. 19-cv-24497, 2020 WL 509987 (S.D. Fla. Jan. 31, 2020) ............................................................................................... 16

*In re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011) .................................................................... 11

*In re Clerici*, 481 F.3d 1324 (11th Cir. 2007) ............................................................... 12, 16, 19

*In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC2021, 2021 WL 2323226 (S.D. Fla. June 1, 2021) ................................................. 13

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ........................................................................... 11

*In re EvenstarMaster Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283 (S.D.N.Y. Nov. 23,2021) ............................................................................................................. 15

*In re Ex Parte Petition of Colombo Agroindústria S.A.*, No. 22-21670-MC, 2022 WL 2167719 (S.D. Fla. Jun. 16, 2022) ............................................................................................ 19

*In re Furstenberg Fin. SAS*, No. 16-mc-60266, 2016 WL 10707012 (S.D. Fla. July 27, 2016). 12, 13, 14

*In re Gonzalez*, No. 23-mc-23593, 2023 WL 6638062 (S.D. Fla. Oct. 12, 2023) ........................ 13

*In re Kidd*, No. 3:20-cv-00800, 2020 WL 5594122 (D. Conn. Sept. 18, 2020) ........................... 16

*In re Kurbatova*, No. 18-mc-81554-BLOOM/Valle, 2019 WL 2180704 (S.D. Fla. May 20, 2019) ................................................................................................................................................. 11

*In re NRC Holding, Ltd.*, Case No. 14-MC-61962-Bloom, 2015 WL 541770 (S.D. Fla. Feb. 9, 2015) ............................................................................................................................................ 12

*In re Peruvian Sporting Goods S.A.C.*, No. 18-mc-91220, 2018 WL 7047645 (D. Mass. Dec. 7, 2018) ..................................................................................................................................... 17, 18

*In re Petrus Advisors Invs. Fund, L.P.*, No. 22-cv-22437, 2023 WL 3871614 (S.D. Fla. Mar. 9, 2023) ............................................................................................................................... 12, 14, 17

*In re Pons*, 614 F. Supp. 3d 1134 (S.D. Fla. 2020) .................................................................... 15

*In re Pons,* No. 19-23236-MC, 2020 WL 364125 (S.D. Fla. Jan. 22, 2020) ............................... 18

*In re: Renco Grp.*, Docket No. 1:22-cv-21115, ECF No. 8 (S.D. Fla. June 8, 2022) ................... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........................... 11, 12, 15, 17

*LAE Techs. Hong Kong Ltd. v. Demuren*, No. 23-2314 (ZNQ), 2024 WL 863464 (D.N.J. Feb. 29, 2024) ..................................................................................................................................... 15, 16

*Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996) ....................................... 10

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ......................................................................... 12, 17

*Rothe v. Aballí*, No. 20-12543, 2021 WL 4429814 (11th Cir. 2021) ........................................... 17

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) ............................... 14

**Statutes**

28 U.S.C. § 1782 ...................................................................................................................... 2, 10

## I.    <u>INTRODUCTION</u>

Felix Rosenberg, on behalf of Peruvian gaming entities Nevada Entretenimientos S.A.C. ("Nevada") and Alpamayo Inversiones S.A.C ("Alpamayo," and together with Nevada, the "Peruvian Entities"), launched an abusive criminal proceeding in Peru against current and former employees of IGT ("IGT" or "Applicants"[1]) to manufacture leverage in settlement negotiations and prevent IGT from initiating Peruvian civil litigation. For nearly a decade, IGT, one of the largest and most reputable gaming companies in the world, has sold slot machines to the Peruvian Entities for use in casinos through two affiliates, IGT Peru Solutions, S.A. and International Game Technology S.R.L. The Peruvian Entities racked up significant debt under this commercial relationship, which they agreed to pay down over time through duly executed promissory notes. Everyone was on the same page: either the Peruvian Entities pay off their debt to IGT or IGT will bring litigation in Peruvian court. That was the good faith deal the parties struck to keep their commercial relationship alive.

Out of nowhere, Felix Rosenberg eschewed any type of good faith action in the parties' dispute. In August 2024, after making previously unmentioned claims regarding IGT's machines and demanding settlement discussions with himself, IGT executives, and at least one of his U.S.-based sons, Rosenberg decided to file a baseless criminal complaint (the "Peruvian Criminal Proceeding") against IGT employees in Peru and on behalf of his Peruvian Entities. This Proceeding is based not in Lima, the capital and commercial center of Peru where the parties' commercial relationship took place, but in Ica, a rural location that has no nexus to the dispute between IGT and the Peruvian Entities. The only plausible explanation for initiating this criminal proceeding in Ica is because the Peruvian Entities think the forum favors them. And they may be right, given that the Ica prosecutor who took the case—Percy Samir Palomino Cruz—has recently been suspended for engaging in prosecutorial misconduct in another criminal case. That fact, coupled with the fact that Felix Rosenberg has been investigated for the crime of money laundering, show that the Peruvian Criminal Proceeding is, likely, a sham.

---

[1] "IGT" and "Applicants" refers to the entity and three natural persons bringing this application, which are IGT and the three current IGT employees named in the criminal complaint: Nick Khin, Drew Kelley, and David Flinn. References to IGT include IGT's Peruvian affiliates, IGT Peru Solutions, S.A. and International Game Technology S.R.L.

This conclusion is also clear from a plain reading of the criminal complaint as well as the prosecutorial report that explains why the prosecutor opened the Peruvian Criminal Proceeding. In the latter document, Mr. Palomino states that he is concerned that IGT (a publicly traded U.S. entity with a sterling reputation) purposely sold defective slot machines to the Peruvian Entities, despite there being no documentary record of any such defects. Mr. Palomino acknowledges that there is extensive evidence that the Peruvian Entities accepted the condition of the slot machines and agreed to pay their full value, yet he indicates that Nevada and Alpamayo representatives may have been forced to accept the machines and pay for them through coercive conduct on behalf of IGT. His report, however, cites to no objective evidence concerning this alleged misconduct. Mr. Palomino appears to have taken the baseless testimony of Felix Rosenberg and other Nevada and Alpamayo representatives about this matter at face value and despite the documentary evidence to the contrary.

At best, the Peruvian Criminal Proceeding is a commercial case masquerading as a criminal matter. To the extent the Peruvian Entities had any issue with the machines or the (scant) debt repayments they made, they should have pursued those claims in a Peruvian commercial court in accordance with the dispute resolution clauses in the relevant agreements. But they have never done that, choosing instead to go nuclear with a criminal proceeding to try to pressure IGT to forgive this debt. This is not conjecture: Felix Rosenberg admitted as much in a recent conversation with IGT in which he stated that he would "stop" the Peruvian Criminal Proceeding if IGT agreed to forgive the more than USD $15 million his Peruvian Entities owe IGT.

Based on the foregoing, IGT brings this application under 28 U.S.C. § 1782 so that it may take discovery on Felix Rosenberg and his sons—who are familiar with the underlying dispute, as admitted by Felix Rosenberg in recent written correspondences—that live in this District. This discovery is necessary for two reasons. ***First***, it will assist IGT's defense of the accusations and misrepresentations in the Peruvian Criminal Proceeding and allow IGT to discover the extraordinary circumstances that led Felix Rosenberg to initiate the Peruvian Criminal Proceeding on behalf of his Peruvian Entities. ***Second***, it will assist IGT in its preparation and prosecution of the commercial case that it plans to bring against the Peruvian Entities in Peruvian court in order to collect upon the more than USD $15 million in outstanding debt (the "Contemplated Civil Proceeding").

The mandatory § 1782 factors are met here. The subpoena respondents all reside in the Southern District of Florida, Applicants intend to use the requested discovery to rebut the charges raised in the Peruvian Criminal Proceeding and to pursue the soon-to-be-filed Contemplated Civil Proceeding, and IGT (through its Peruvian affiliates) and its current employees are "interested persons" insofar as they are foreign litigants in both of the foreign proceedings at issue here. IGT also meets the discretionary factors. The subpoena respondents are not party to the Peruvian Criminal Proceeding or the Contemplated Civil Proceeding. Peruvian courts are receptive to U.S. discovery, and there is no proof that Applicants are "circumventing" Peruvian proof-gathering restrictions. Finally, the requested discovery is not burdensome, especially given the high stakes involved here: foreign criminal matters, potential Red Notices, and millions of dollars owed to IGT.

This is why § 1782 exists: to guarantee "interested persons" the use of the U.S. discovery system for foreign litigation. Accordingly, the Court should grant this Application and allow IGT to serve Felix Rosenberg, Elliot Rosenberg, Erwin Rosenberg, and Edmundo Rosenberg with deposition and document subpoenas (collectively, the "Subpoena Respondents").

## II.     FACTUAL BACKGROUND

The Subpoena Respondents all reside in the Southern District of Florida. *See* Declaration of Stephen Calogero, dated November 5, 2024 ("Calogero Decl."), at ¶¶ 9, 38–48. Felix Rosenberg initiated the Peruvian Criminal Proceeding on behalf of Nevada and Alpamayo against IGT's employees. *Id.* ¶ 4. Felix Rosenberg is the majority stakeholder and executive director of both Nevada and Alpamayo, Peruvian-based gaming companies, against which IGT, through its affiliates, plans to bring the Contemplated Civil Proceeding in Peru because of the ongoing commercial dispute between the companies. *Id.* ¶ 11. Felix Rosenberg's sons, Elliot Rosenberg, Erwin Rosenberg, and Edmundo Rosenberg, likely have personal knowledge of the underlying disputes between the Peruvian Entities and IGT, as conceded by Felix Rosenberg and IGT's experience in dealing with the Rosenbergs with respect to these matters. *Id.* ¶ 17.

IGT is a gaming company and one of the leading slot machine manufacturers in the world. IGT has its gaming headquarters in Las Vegas (Nevada) and affiliated company offices in London (United Kingdom), Rome (Italy), and Providence (Rhode Island). *Id.* ¶ 10. IGT operates in Peru through two affiliate companies, IGT Peru Solutions, S.A. and International Game Technology S.R.L. *Id.*

3

### A.    The Underlying Commercial Dispute

The commercial dispute between IGT and the Peruvian Entities is a simple matter of non-payment for purchased slot machines. Between 2015 and 2017, IGT (operating through its Peruvian affiliates) entered into approximately twenty commercial contracts with Nevada and Alpamayo. *Id.* ¶ 12. Under those contracts, IGT committed to sell and service its slot machines and Nevada and Alpamayo agreed to make periodic payments for these goods and services. *Id.* Pursuant to these contracts, IGT sold Nevada and Alpamayo more than 1,500 machines, combined, and performed services related to those machines. *Id.* ¶ 13.

In or about 2018, Nevada and Alpamayo and Nevada stopped making payments owed to IGT for the slot machines and performed services. *Id.* ¶ 14. The parties conducted negotiations for several months to resolve the nonpayment issues. *Id.* Ultimately, IGT agreed not to sue as long as Nevada and Alpamayo made periodic payments under a payment plan for the amounts owed to IGT under the contracts. *Id.* In late 2018, these agreements were memorialized through promissory notes (the "Promissory Notes"), which were signed and executed by Felix Rosenberg as well as other representatives of Nevada and Alpamayo. *Id.* The Promissory Notes acknowledge that Nevada and Alpamayo owed IGT (via its affiliates) USD $8,998,628.04 and $4,761,532.18, respectively, as of December 2018. *Id.* ¶ 14 & *id.* n.7. From 2018 through 2022, Nevada and Alpamayo made some Promissory Note payments but continued to rack up debt by buying more slot machines and failing to pay for them. *Id.* ¶ 15. The Peruvian Entities never came close to satisfying their obligations under the Promissory Notes. *Id.*

In 2022, IGT reengaged Nevada and Alpamayo in good-faith negotiations to resolve the Peruvian companies' continuous failure to pay for the slot machines. The parties recognized that Nevada and Alpamayo still owed IGT a large sum of money and they would satisfy their obligations over time by making periodic payments according to a payment plan. *Id.* ¶ 16.

Out of nowhere, on July 8, 2024, Nevada and Alpamayo became much more aggressive towards IGT. Felix Rosenberg sent Mr. Khin, IGT's President, a WhatsApp message stating that IGT's slot machines were supposedly defective and needed to be serviced or replaced as soon as possible. *Id.* ¶ 17. Felix Rosenberg then demanded an in-person settlement meeting in Miami that would be attended by Mr. Khin, Felix Rosenberg, and at least one of Felix Rosenberg's sons who lives in Miami. *Id.* Mr. Khin indicated he did not know what had caused Felix Rosenberg to make

4

these demands and noted the recent communications between IGT and Nevada and Alpamayo were focused on the settlement payments under the Promissory Notes. *Id.* ¶ 18.

About a month later, in August 2024, IGT discovered that Felix Rosenberg filed a criminal complaint in Peru against IGT's employees with the Ica prosecutor, who then commenced a formal investigation into alleged crimes of criminal organization, extortion, and aggravated fraud. *Id.* ¶ 19. Since the initiation of the investigation, IGT has been continuously harassed by various individuals claiming to act as legal counsel for Nevada and Alpamayo regarding the parties' commercial dispute, all of whom are demanding that IGT release Nevada and Alpamayo from their payment obligations because of alleged defects with the slot machines. *Id.* ¶ 20. IGT has also been harassed by Felix Rosenberg and other representatives of Nevada and Alpamayo, who have been persistently calling and emailing IGT employees, such as Mr. Khin, to pressure them to agree to Nevada's and Alpamayo's demands. *Id.* ¶ 21.

In one such call, Felix Rosenberg told Mr. Khin he could "stop" the criminal investigation if IGT agreed to his companies' demands. *Id.* This statement is suspicious and concerning; under Peruvian criminal procedure, a complainant cannot "stop" an investigation into business crimes. *Id.* ¶ 22. Rather, the Prosecutor is obligated to finish his investigation. *Id.* The only explanation for Felix's Rosenberg's claimed ability to "stop" the investigation is he has influence and control over the prosecutor conducting the investigation. *Id.*

Felix Rosenberg and the prosecutor, Percy Samir Palomino Cruz, both have questionable reputations. Felix Rosenberg has been investigated for money laundering multiple times. *Id.* ¶ 23. Most recently, the *Panama Papers* leak revealed that he had "more than a dozen offshore companies that he used to manage his gaming business," which led to the opening of an investigation in Peru against Felix Rosenberg and his son Edmundo Rosenberg. *Id.* Mr. Palomino is currently serving a suspension for prosecutorial misconduct. *Id.* ¶ 24. In particular, Mr. Palomino is serving a 5-month suspension for failing to execute prosecutorial tasks such as his failure to conduct an adequate investigation, obtain relevant evidence, and adhere with relevant deadlines. *Id.*

To date, Nevada and Alpamayo owe IGT (via its affiliates) a combined **USD $15,323,648**, exclusive of interest and costs. *Id.* ¶ 15.

### B.    The Peruvian Criminal Proceeding

Mr. Palomino, a prosecutor based in Ica, Peru, commenced the Peruvian Criminal Proceeding on August 5, 2024 in response to a criminal complaint filed by Felix Rosenberg on behalf of

Nevada and Alpamayo. *Id.* ¶ 26. Ica is a small city located about four hours south of Lima by car. *Id.* ¶ 27. It is a strange choice for the investigation because the alleged misconduct and injury all occurred in Lima. *Id.* There is no jurisdictional basis for having the Peruvian Criminal Proceeding based in Ica; Felix Rosenberg likely filed it there because he views it as a more favorable jurisdiction where he can wield control over the presiding prosecutor. *Id.* Five current and former IGT employees, including Nick Khin, Drew Kelley, David Flinn, Walter Giancomo Bugno, and Beatriz Ccopa Almerco, are the subjects of the investigation in the Peruvian Criminal Proceeding. *Id.* ¶ 28. With the exception of Mr. Bugno and Ms. Ccopa, all Defendants are current and former U.S.-based IGT employees; Mr. Bugno worked for IGT in Europe and Ms. Ccopa worked for IGT in Peru. *Id.* The alleged crimes involve the crimes of "criminal organization" (similar to a RICO Act violation in the U.S.), extortion, and "aggravated fraud." *Id.*

The criminal allegations against IGT's employees provide that: (i) in or around 2018, Nevada and Alpamayo communicated to IGT that certain slot machines were defective; (ii) IGT refused to fix those machines; (iii) instead, IGT, through the accused employees, coerced Nevada and Alpamayo to sign the Promissory Notes by threatening to commence litigation under the contracts between the parties; (iv) Nevada and Alpamayo made payments under the Promissory Notes against their will over the ensuing years due in part to violent threats from the accused individuals; and (v) IGT admitted to selling defective slot machines to Nevada and Alpamayo, but did so only on telephone calls, in an attempt to explain why there is no document or other written evidence of this supposed defect. *Id.* ¶ 29.

None of these allegations is true. The documents memorializing the commercial disputes between IGT (and its Peruvian affiliates), Nevada, and Alpamayo demonstrate that IGT consistently complied with its obligations while Nevada and Alpamayo consistently did not. *Id.* ¶ 30. In fact, IGT attempted to preserve its relationship with Nevada and Alpamayo for almost a decade, despite the fact that the Peruvian Entities consistently failed to pay for the machines. There is no evidence to support the allegation that the accused individuals coerced Nevada and Alpamayo to sign the Promissory Notes; this is a salacious allegation derived from the self-serving accounts of Felix Rosenberg and other Nevada and Alpamayo representatives. *Id.* At bottom, the allegations in the Peruvian Criminal Proceeding are manufactured to support a criminal investigation initiated solely to force IGT to forgive the millions of dollars in debt owed by Nevada and Alpamayo. *Id.*

Under Peruvian law, Mr. Palomino has twelve months to investigate the alleged crimes. *Id.* ¶ 31. Within that timeframe, he can either close the investigation or file formal charges against the accused individuals. *Id.* As a part of the investigation, Mr. Palomino will have to interview the five accused individuals, the complainant (Felix Rosenberg or another representative of Alpamayo and Nevada), and other relevant witnesses. *Id.* He will also review the relevant documents associated with the underlying criminal allegations. *Id.* Applicants may also submit their evidence in the Peruvian Criminal Proceeding. *Id.* ¶ 55.

IGT and the accused individuals will not have the ability to take discovery during the investigative phase of the Proceeding. *Id.* ¶ 32. At most, IGT and the accused individuals can make recommendations to the Peruvian prosecutor as to how to conduct his investigation or as to what types of questions to ask Felix Rosenberg and other witnesses during the interviews that the prosecutor will conduct. *Id.* Neither IGT nor the accused individuals will have the opportunity to request documents from Felix Rosenberg, his sons, or any other witnesses in the Peruvian Criminal Proceeding; document discovery is done only at the behest of the prosecutor. *Id.* Given the apparent existence of an inappropriate relationship between Felix Rosenberg and Mr. Palomino, as well as Mr. Palomino's history of prosecutorial misconduct, it is extremely unlikely that Mr. Palomino would take input from IGT or the accused individuals into account during his investigation.

### C.    The Contemplated Civil Proceeding

As explained above, Nevada and Alpamayo to date owe IGT ***more than USD $15 million*** under the Promissory Notes and other commercial agreements, based on their accumulated debt from failing to pay for the purchased slot machines. *Id.* ¶ 33. IGT has been attempting to settle this dispute amicably since 2018 in order to preserve the parties' commercial relationship. *Id.* ¶ 34. Among other things, IGT's Peruvian affiliates have executed two Promissory Notes that allowed Nevada and Alpamayo to pay down their respective debts to IGT over time. *Id.* Even when Nevada and Alpamayo consistently failed over the course of more than five years to make required payments under those Notes, IGT worked with those companies in good faith to avoid litigation and maintain their commercial relationship. *Id.*

Nevada and Alpamayo's sudden initiation of a baseless criminal investigation into IGT's employees makes it clear that the Peruvian Companies are not acting in good faith to resolve the commercial dispute. *Id.* ¶ 35. Accordingly, IGT, through its Peruvian affiliates, intends to bring civil claims against the Peruvian Companies. To that end, IGT has hired Peruvian outside counsel,

Benites, Vargas & Ugaz ("BVU"), to prepare a lawsuit against Nevada and Alpamayo under the Promissory Notes and the relevant contracts (the "Contemplated Civil Proceeding"). *Id.* BVU was retained, in part, for this purpose in mid-October 2024, given that these claims must be brought in the courts of Lima, Peru. *Id.* Since its retention, BVU has worked closely with IGT's U.S. legal team to review the relevant documents and prepare the legal arguments and claims under the relevant contracts. *Id.* ¶ 36. The Contemplated Civil Proceeding will seek to recover the sums owed under the relevant contracts, including the Promissory Notes, plus interest and litigation costs. *Id.* ¶ 37. BVU has also formally appeared as criminal counsel to the accused individuals in the Peruvian Criminal Proceeding. *Id.* ¶ 36.

> **D.   Discovery Sought**

Applicants seek documents and sworn testimony from Felix Rosenberg and three of his sons, *i.e.*, Elliot Rosenberg, Erwin Rosenberg, and Edmundo Rosenberg, that will be relevant to the Peruvian Criminal Proceeding and Contemplated Civil Proceeding. *Id.* ¶ 49.

Felix Rosenberg has personal knowledge of the allegations in the Peruvian Criminal Proceeding because he was the Nevada and Alpamayo representative who signed the criminal complaint initiating that Proceeding. *Id.* ¶ 50. He also has personal knowledge concerning the facts and circumstances related to the Contemplated Civil Proceeding because he owns and controls Nevada and Alpamayo and, on their behalf, signed the agreements those companies have with IGT, including the Promissory Notes. *Id.*

Elliot Rosenberg, Erwin Rosenberg, and Edmundo Rosenberg are also likely to have personal knowledge with respect to these matters because Felix Rosenberg frequently involved his sons in the business between the Peruvian Entities and IGT. *Id.* ¶ 51. Felix Rosenberg also planned to include one of his sons in the July 2024 settlement meeting in Miami. *Id.* Because it is not clear at this time which "son" Felix Rosenberg was planning to include, IGT seeks an order from this Court to pursue discovery against all three of Felix Rosenberg's Miami-based sons. *Id.* Of course, to the extent these individuals do not have relevant information, IGT will not take needless discovery.

Applicants seek documents and deposition testimony from the Subpoena Respondents regarding the following issues: (i) circumstances that led to the July 8, 2024 demand for IGT to meet with Felix Rosenberg and one of his "son[s]" concerning the dispute between IGT, Nevada, and Alpamayo; (ii) circumstances that led to the filing of a criminal complaint in the Peruvian Criminal

Proceeding against IGT's current and former employees; (iii) documentary support (assuming it exists) for the claims against IGT's employees in the Peruvian Criminal Proceeding; (iv) the financial condition of Nevada and Alpamayo because of their failure to make payments obligated under the Promissory Notes and other contracts with IGT; (v) correspondences and other documents sufficient to demonstrate the relationship between the Ica prosecutor and the Rosenbergs. *Id.* ¶ 52. These issues are relevant to both the Peruvian Criminal Proceeding and the Contemplated Civil Proceeding. *Id.* The specific document requests are:

1. Communications and documents evidencing or memorializing any conversations related to IGT between (i) You or others affiliated with Nevada and Alpamayo and (ii) the Office of the Public Prosecutor in Ica or any other Peruvian law enforcement authority.

2. Documents evidencing why Felix Rosenberg brought a criminal complaint in Ica, Peru, including documents evidencing any illegal activities by IGT that You or anyone else affiliated with Nevada and Alpamayo believe to have occurred in that location.

3. Documents that support any of the allegations against IGT in the Peruvian Criminal Proceeding including, but not limited to: (a) documents evidencing that IGT was engaged in organized crime in Peru; (b) documents evidencing that an IGT employee extorted, or tried to extort, any individual affiliated with Nevada and Alpamayo; (c) documents evidencing any coercion, pressure, or threats by IGT relating to the machines, including any bills of exchange, proposed settlement agreements, or any responsive communications; and (d) documents evidencing that an IGT employee defrauded, or tried to defraud, any individual affiliated with Nevada and Alpamayo.

4. Documents evidencing operational differences between the Slot Machine features offered by IGT and those ultimately provided to Nevada and Alpamayo.

5. Documents evidencing any attempt by IGT to reclaim the Slot Machines.

6. Documents evidencing payments by Nevada or Alpamayo to IGT for the Slot Machines.

7. Documents regarding the meeting between Felix Rosenberg and Drew Kelley in 2022 that is referenced in the Peruvian Criminal Proceeding.

8. Documents relating to the financial expert report referenced in the Peruvian Criminal Proceeding, including the report, any documents provided with the report, and the documents justifying the amounts or any other statements in that report.

9.      Documents regarding the allegedly poor quality of the Slot Machines provided by IGT, including any alleged admissions made by IGT regarding those machines.

10.     Documents evidencing information provided by IGT relating to their slot machines before Nevada's or Alpamayo's purchase of the Slot Machines.

11.     Documents evidencing "tricks" IGT committed in November-December 2018 regarding any "Extrajudicial Transactions," as referenced in the Peruvian Criminal Proceeding.

12.     Documents evidencing or memorializing any phone calls that You or anyone affiliated with Nevada and Alpamayo had with IGT, including any agreements made over the phone.

13.     Documents evidencing the financial condition of Nevada and Alpamayo.

A copy of Applicants' subpoenas for each of the Subpoena Respondents, with document requests encompassing these categories of documents and requests for deposition testimony, are attached to the Application as Exhibits 20-23.

## III.   <u>ARGUMENT</u>

This application satisfies the well-established mandatory and discretionary factors for discovery under § 1782 and should thus be granted. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…The order may be made…upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782. The goals of the statute are twofold: "to provide equitable and efficacious discovery procedures in the United States courts for the benefit of tribunals and litigants involved in litigation with international aspects  and to encourage foreign countries to provide similar means of assistance to [United States] courts." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (cleaned up). "The current embodiment of the law reflects the policy choice to provide efficient means of assistance in our federal courts for litigants involved in international litigation and prompt foreign courts to follow our generous example and provide similar assistance to our court systems." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007 (11th Cir. 2015) (cleaned up).

### A.     Legal Standard

Courts can grant an application under § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (addressing statutory factors); *In re Bayer*, 146 F.3d 188, 193, 195 (3d Cir. 1998). This Application satisfies all three statutory requirements.

When a court finds that the statutory requirements of § 1782 are met, it may, in its discretion, grant an application for discovery.  The Supreme Court has identified several discretionary factors that federal courts are to consider: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004); *JAS Forwarding (USA), Inc.*, 747 F.3d at 1271–72; *Brandi-Dohrn*, 673 F.3d at 80–81; *In re Chevron Corp.*, 633 F.3d 153, 162–64 (3d Cir. 2011).  As set forth below, all of the discretionary factors weigh in favor of granting Applicants the requested discovery.

### B.     The Statutory Requirements of 28 U.S.C. § 1782 Are Satisfied.

Two of three statutory factors can be addressed easily, and the third is also readily met.

1.     Felix Rosenberg and his sons reside in this District. Felix Rosenberg owns a residence in Miami Beach and other properties in Dade County. Calogero Decl. ¶ 39. He has a significant presence in Miami and is either a U.S. citizen or permanent resident. *Id.* ¶¶ 39–45. Edmundo Rosenberg, Elliot Rosenberg, and Erwin Rosenberg all also reside in Miami. *Id.* ¶¶ 46–48. Insofar as "tag jurisdiction," would be permissible, *see In re Edelman*, 295 F.3d 171, 178–79 (2d Cir. 2002); *In re Kurbatova*, No. 18-mc-81554-BLOOM/Valle, 2019 WL 2180704, at *2 (S.D. Fla. May 20, 2019) (adopting *In re Edelman*); *see also In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08–20378–MC, 2011 WL 181311, at *8 (S.D. Fla. Jan. 19, 2011) (same), then the Subpoena Recipients' far more extensive contacts are sufficient.

11

2.      Applicants are "interested parties" under § 1782. An "[i]nterested person" includes litigants before foreign or international tribunals, as well as any other person who has a reasonable interest in obtaining judicial assistance. *See Intel*, 542 U.S. at 256–57 ("No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782."). Applicants are current IGT employees who are the subjects of the Criminal Investigation in Peru, and IGT, through its Peruvian affiliates, has a significant commercial dispute with Nevada and Alpamayo and also intends to file the Contemplated Civil Proceeding in Peru. *See Calogero* Decl. ¶¶ 5, 10–24.

3.      All that remains is the "for use" requirement, which Applicants also satisfy. Applicants must show the requested discovery is intended to be used—*i.e.*, is relevant—at some stage of a foreign proceeding. *See Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015). The term "for use" should be interpreted in accordance with its ordinary meaning: "that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Petrus Advisors Invs. Fund, L.P.*, No. 22-cv-22437, 2023 WL 3871614, at *4 (S.D. Fla. Mar. 9, 2023) (citing *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *4 (S.D. Fla. Dec. 18, 2018); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)).

In *Intel*, the Supreme Court explained that a foreign proceeding need not be "pending" or even "imminent" when the discovery is sought, provided that the future proceeding is "within reasonable contemplation." 542 U.S. at 258–59; *accord In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007). And there is "no temporal requirement under Section 1782" with regard to the timing of the contemplated foreign litigation. *See In re Furstenberg Fin. SAS*, No. 16-mc-60266, 2016 WL 10707012, at *6 (S.D. Fla. July 27, 2016). Nor does §1782 "impose a requirement that a foreign proceeding be at a certain stage prior to discovery being granted." *In re NRC Holding, Ltd.*, Case No. 14-MC-61962-Bloom, 2015 WL 541770, at *2 (S.D. Fla. Feb. 9, 2015).

Here, two proceedings satisfy this requirement. ***First***, an ongoing criminal proceeding in Peru already exists: the Peruvian Criminal Proceeding against IGT's employees by Nevada and Alpamayo. *See* Calogero Decl. ¶¶ 26-32. Courts routinely grant 1782 applications to obtain discovery for use in foreign criminal proceedings; "in fact, the statute specifically provides that the evidence obtained through § 1782 can be used in 'criminal investigations conducted before *formal* accusation." *In re Clerici*, 481 F.3d at 1333 (emphasis in original); *see also In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, No. 20-25212-MC2021,

2021 WL 2323226, at *4 (S.D. Fla. June 1, 2021) (denying motion to vacate order granting 1782 application to obtain documents and conduct depositions in "reasonably contemplated civil and/or criminal proceedings in Ecuador"); *Campos-Álvarez v. Newmont Mining Corp.*, No. 1:14–cv–00208–REB, 2016 WL 9725290, at *1 (D. Col. Sept. 27, 2016) (granting 1782 application to obtain documents and conduct deposition for use in a Peruvian criminal investigation and related civil action); *Consorcio Minero S.A. v. Doe Run Resources Corp.*, No. 4:11–MC–583 (CEJ), 2011 WL 4550200, at *1 (E.D. Mo. Sept. 30, 2011) (granting 1782 application to obtain documents and conduct depositions for use in Peruvian criminal libel action and criminal investigation, as well as related civil actions).

*Second*, the Contemplated Civil Proceeding is a "reasonably contemplated" litigation under *Intel*. A proceeding "within reasonable contemplation" means it must be "more than speculative," and there must be "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *JAS Forwarding*, 747 F.3d at 1270–71 (explaining that proceeding was within reasonable contemplation based on evidence of an ongoing investigation) (cleaned up); *see also In re Application of Bracha Found.*, 663 Fed. App'x. 755, 763–64 (11th Cir. 2016) (finding proceeding was within reasonable contemplation based on representations by applicants that they intended to return to litigation in the foreign jurisdiction); *In re Deposito*, 2021 WL 2323226, at *4 (finding proceeding was within reasonable contemplation based on a declaration that a proceeding would be filed in Ecuador once the Applicant could obtain the discovery sought); *In re Furstenberg Fin. SAS*, 2016 WL 10707012, at *6 (The "actions to be filed in Luxembourg against Paul constitute a foreign proceeding as within 'reasonable contemplation' because Applicants' intention to file such actions is 'sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially."); *In re Gonzalez*, No. 23-mc-23593, 2023 WL 6638062, at *3–*4 (S.D. Fla. Oct. 12, 2023) (finding proceeding was within reasonable contemplation because applicants had retained counsel in Venezuela, and Venezuela counsel had submitted a declaration explaining the need for the sought-after discovery).

An ongoing commercial dispute exists in Peru between Felix Rosenberg's companies, with Nevada and Alpamayo each owing IGT millions of dollars. *See* Calogero Decl. ¶¶ 14–16. IGT repeatedly tried to settle the dispute amicably, but Nevada and Alpamayo ultimately made little effort to repay IGT and then, out of nowhere, did away with any good faith efforts to negotiate. *See id.* ¶¶ 15–21. Therefore, IGT is preparing a commercial lawsuit against on behalf of its

13

Peruvian affiliates against Nevada and Alpamayo in Peru. *See id.* ¶¶ 33–37. Indeed, Applicants' intended recourse to civil litigation likely spurred Felix Rosenberg into filing the criminal complaint. Applicants have retained a Peruvian lawyer (BVU) and are in the process of preparing filings for Peruvian litigation, and the discovery obtained via this application will assist in bringing and prosecuting that case. *See id.* ¶¶ 35–36. These are all "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *JAS Forwarding*, 747 F.3d at 1270–71; *see also In re Furstenberg Fin. SAS,* 2016 WL 10707012, at *6 (finding that intention to file an action was sufficient to meet statutory requirement).

Moreover, the sought after discovery "is relevant to the claims in the foreign proceedings and [p]etitioner will use the evidence gathered here to support its claims and legal theories made in the [foreign] litigation." *In re Petrus Advisors Invs. Fund*, 2023 WL 3871614, at *4 (cleaned up). The document requests focus on the initiation of and claims made in the Peruvian Criminal Proceeding, including circumstances that led to the July 8, 2024 demand for IGT to meet with Felix Rosenberg and one of his "son[s]" concerning the dispute between IGT, Nevada, and Alpamayo; circumstances that led to the filing of a criminal complaint in the Peruvian Criminal Proceeding; documentary support (assuming it exists) for the claims against IGT's employees in the Peruvian Criminal Proceeding; and correspondences and other documents sufficient to demonstrate the relationship between the Ica prosecutor and the Rosenbergs. *See* Calogero Decl. ¶¶ 52–53. Additionally, the document requests focus on pertinent aspects of the parties' commercial relationship, including the financial condition of Nevada and Alpamayo because of their failure to make payments obligated under the Promissory Notes and other contracts with IGT; the alleged poor quality of the slot machines; meetings and communications between IGT's employees and Felix Rosenberg, and payments made by Nevada and Alpamayo to IGT. *See id.* These requests cover the exact issues that will be evaluated and litigated in the Criminal Proceeding and Contemplated Civil Proceeding. The requested depositions will cover the same ground. Accordingly, this statutory requirement is satisfied.

## C.     The Discretionary Considerations of § 1782 Favor Granting the Application

"Once the statutory requirements [of 28 U.S.C. § 1782] are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (cleaned up); *accord JAS Forwarding (USA), Inc.*, 747 F.3d at 1272. As detailed above, the four discretionary factors are: (1) whether the person from whom discovery is sought is

a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome.  *See Intel Corp.*, 542 U.S. at 264–65.  Each of these factors favors granting this application.

       1.    <u>Applicants Seek Discovery From Non-Parties To The Foreign Proceeding</u>

Where discovery is sought from entities that are not participating in the foreign proceeding, the need for discovery is readily apparent. *See Intel Corp.*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."); *see also In re Pons*, 614 F. Supp. 3d 1134, 1150 (S.D. Fla. 2020) (same).

Under Peruvian law, Felix Rosenberg is not a party to the Peruvian Criminal Proceeding; Nevada and Alpamayo are the entities allegedly harmed by the accusations in the complaint. *See* Calogero Decl. ¶ 57. Nevada and Alpamayo will likely designate a representative other than Felix Rosenberg to answer questions from the prosecutor on behalf of the Entities. *Id.* Even if Felix Rosenberg is interviewed by the prosecutor as the representative of Nevada and Alpamayo, Applicants will not be able to ask him questions directly, nor obtain any testimony proffered under oath. *Id.* ¶ 58. Similarly, Applicants will not be able to obtain documents from Felix Rosenberg regarding the Peruvian Criminal Proceeding; only the prosecutor can make this request. *Id.* ¶ 59. Moreover, the prosecutor, not Felix Rosenberg, controls the investigation and is the only person who can determine how the case progresses and whether to file charges against IGT's employees. *Id.* ¶¶ 58–59. To the extent Felix Rosenberg does exercise control over the investigation, this control stems from corrupt dealings with the prosecutor. Felix Rosenberg's sons are also not parties to the Peruvian Criminal Proceeding. None of them is expressly mentioned in the criminal complaint, and therefore are unlikely to be called as witnesses. *Id.* ¶ 60.

The Contemplated Civil Proceedings will be brought by IGT through its Peruvian affiliates against Nevada and Alpamayo, not against Felix Rosenberg (or any of his sons), so none of the subpoena respondents are party in that case. *Id.* ¶ 61. There "is no bar to production where the subpoenaed party and the litigation opponent are separate legal entities." *See In re EvenstarMaster Fund SPC*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283, at *4 (S.D.N.Y. Nov. 23,2021) (cleaned up); *see also LAE Techs. Hong Kong Ltd. v. Demuren*, No. 23-2314 (ZNQ), 2024 WL

863464, at *1, 3, 6 (D.N.J. Feb. 29, 2024) (finding that § 1782 discovery against a U.S.-based part-owner, director, and CEO of a Hong Kong litigant was appropriate even though company was being sued overseas);[2] *In re Bio Energias Comercializadora de Energia Ltda.*, No. 19-cv-24497, 2020 WL 509987, at *2 (S.D. Fla. Jan. 31, 2020) (rejecting argument that Respondents were participants in foreign proceeding because they allegedly owned one of the companies party to the Brazilian arbitration); *In re Application of Imanagement Servs. Ltd.*, No. Civ.A. 05–2311(JAG), 2006 WL 547949, at *4 (D.N.J. Mar. 3, 2006) (permitting discovery and deposition against the CEO and Chairman of BNY, who was the party to the foreign litigation); *In re Kidd*, No. 3:20-cv-00800, 2020 WL 5594122, at *4–5 (D. Conn. Sept. 18, 2020) (permitting discovery against the U.S.-based managing directors and limited partners of a foreign defendant). This factor thus weighs in favor of granting the 1782 application.

        2.      The Peruvian Courts Are Receptive to U.S. Judicial Assistance

The second discretionary factor identified by the Supreme Court—the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal-court assistance—requires courts to consider "(1) whether United States assistance would offend the foreign country, and (2) whether the material sought is admissible in the foreign tribunal." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (cleaned up). In weighing these elements, courts may only rely on "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995); *see also In re Clerici*, 481 F.3d at 1335 ("[T]here is nothing in the record to suggest that the district court should have declined to grant the § 1782 application based on the nature of the foreign tribunal or the character of the proceedings[.]"). The Eleventh Circuit employs a "middle-of-the-road approach with respect to receptivity," meaning the burden of proof is not on one side or the other. *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019).

This factor also favors granting the requested discovery. There is no indication that the discovery sought in this application would "offend" Peru, nor would the material sought be "inadmissible" in Peru. Peruvian courts have repeatedly been found by district courts to be receptive to U.S. judicial assistance under § 1782, including both documents and deposition testimony. *See,*

---

[2] The *LAE* court denied discovery in part based on traditional U.S. discovery principals relating to the facts of that case. *See id.* at * 7–8.

*e.g.*, *In re: Renco Grp.*, Docket No. 1:22-cv-21115, ECF No. 8 (S.D. Fla. June 8, 2022) (granting 1782 application to obtain discovery and conduct a deposition "for use in a pending, confidential criminal investigation in Peru concerning a conspiracy to defraud…"); *In re Peruvian Sporting Goods S.A.C.*, No. 18-mc-91220, 2018 WL 7047645, at *7 (D. Mass. Dec. 7, 2018) (rejecting argument that Peruvian courts were not receptive to 1782 discovery); *Campos-Álvarez*, 2016 WL 9725290, at *2 ("[T]here is no indication that the Peruvian courts would not be receptive to relevant information gathered from the respondents [via 1782]" and granting application to obtain discovery and conduct deposition); *Consorcio Minero S.A.*, 2011 WL 4550200, at *3 (finding no evidence that Peru would reject discovery obtained via 1782, and granting application to obtain discovery and conduct deposition). Accordingly, Applicants have satisfied its burden.

3.   Applicants Are Not Circumventing Foreign Proof Gathering Restrictions

This factor also weighs in favor of the Application being granted. A primary purpose of § 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel*, 542 U.S. at 262. As such, "there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for §1782 discovery." *In re Application of Bracha Found.*, 663 F. App'x at 765. "To find otherwise would result in including an exhaustion requirement in [S]ection 1782 that is not present." *In re Petrus*, 2023 WL 3871614, at *5 (cleaned up); *see also Rothe v. Aballí*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. 2021) ("[T]here is no such exhaustion requirement in § 1782, and reading one into the statute is contrary to law and clearly erroneous."); *Application of Malev Hung. Airlines*, 964 F.2d 97, 100 (2d. Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement…requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history."); *Mees*, 793 F.3d at 303 ("We have rejected such a 'quasi-exhaustion' requirement…").

The discovery sought here does not, to Applicants' knowledge, violate any restriction under Peruvian law on evidence gathering. *See* Calogero Decl. ¶ 54. Applicants' Peruvian counsel has also indicated that the requested discovery can be submitted as evidence in the Peruvian Criminal Proceeding and the Contemplated Civil Proceeding. *Id.* ¶ 55. Indeed, district courts have previously rejected arguments that § 1782 requests are attempts to circumvent Peru's discovery rules. *See, e.g.*,

*In re Peruvian Sporting Goods S.A.C.*, 2018 WL 7047645, at \*7; *Campos-Álvarez v. Newmont Mining Corp.*, 2016 WL 9725290, at \*2 ("[T]here is no indication that the applicant is using—or misusing—his application to evade proof gathering restrictions applicable in Peru."). Moreover, § 1782 was intended to assist foreign litigants with obtaining both deposition testimony and documents, so that applications requesting depositions are commonly granted, including for use in Peruvian proceedings. *See JAS Forwarding*, 747 F.3d at 1269; *Campos-Álvarez v. Newmont Mining Corp.*, 2016 WL 9725290, at \*1; *Consorcio Minero S.A.*, 2011 WL 4550200, at \*1.

4.   Applicants' Requested Discovery Is Not Overly Burdensome

To not be unduly intrusive or burdensome, discovery requests must be "sufficiently tailored to the litigation issues for which production is sought." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at \*8; *In re Pons*, No. 19-23236-MC, 2020 WL 364125, at \*2 (S.D. Fla. Jan. 22, 2020); *see also In re Bayer*, 146 F.3d at 195 (applying same standard as ordinary domestic U.S. civil litigation).[3]

This Application is not burdensome. Applicants' discovery requests are narrowly tailored to the Peruvian litigations, focusing on topics directly at issue in the Peruvian Criminal Proceeding and the Contemplated Civil Proceeding. *See* Calogero Decl. ¶¶ 52–53. The request is limited to documents and communications during the years Applicants had a commercial relationship with the Peruvian Entities. The documents requested should be in the possession of the Subpoena Respondents; as such, they should be located in this District and should be readily available for production. The Subpoena Respondents should, thus, have little problem locating and producing these documents.

Nor would a deposition be burdensome. The depositions will take place at a time and place of reasonable convenience for all involved (assuming, of course, that the Subpoena Respondents are reasonably cooperative with these issues). The deposition, not surprisingly, would focus on the issues in dispute in the Peruvian Criminal Proceeding and the Contemplated Civil Proceeding. *Id.* Presumably, answering those questions should not be burdensome for Felix Rosenberg because he initiated the Criminal Proceeding against IGT's employees on behalf of Nevada and Alpamayo and has first-hand knowledge of the negotiations between IGT and Nevada and Alpamayo. *Id.* ¶

---

[3] Moreover, this Circuit disapproves of an all-or-nothing approach to discovery requests and encourages parties to meet each other in the middle or narrow, rather than deny, discovery requests that it considers overbroad. *JAS Forwarding*, 747 F.3d at 1272–73 (citation omitted).

18

50. Answering those questions also should not be burdensome for Felix Rosenberg's sons because they have been involved in the business between IGT and Nevada and Alpamayo and are likely to have personal knowledge with respect to these matters. *Id.* ¶ 51. Moreover, to the extent the sons do not have relevant information, Applicants will not take unnecessary discovery, thus lessening the burden posed by the subpoenas.

###### D.    The Application Is Properly Made *Ex Parte*

It is well settled that applications for discovery pursuant to § 1782 may be filed *ex parte* and that a subpoenaed party may subsequently challenge any subpoena issued pursuant to Section 1782 by a timely motion to vacate or quash.  *See, e.g.*, *In re Ex Parte Petition of Colombo Agroin-dústria S.A.*, No. 22-21670-MC, 2022 WL 2167719, at *1 (S.D. Fla. Jun. 16, 2022) ("It is both common and proper for section 1782 applicants to apply for discovery assistance on an ex parte basis.") (citing *In re Clerici*, 481 F.3d at 1337 (affirming denial of motion to vacate an ex parte section 1782 application)); *Gyptec, S.A. v. Hakim-Daccach*, No. 16- 20810-CIV, 2017 WL 6557425, at *2 (S.D. Fla. Sept. 27, 2017) ("*Ex Parte* applications under Section 1782 are proper, and courts, including those in the Southern District of Florida, commonly grant such *ex parte* ap-plications.") (citing *JAS Forwarding (USA), Inc.*, 747 F.3d at 1262)). Applicants accordingly make this application *ex parte* in order to guard against loss or compromise of information sought by the attached subpoenas.

## IV.    <u>CONCLUSION</u>

Accordingly, Applicants request that the Court grant their request for discovery pursuant to 28 U.S.C. § 1782.

Date: November 6, 2024                        Respectfully submitted,

/s *Robert W. Theilhelm, Jr.*
Robert W. Thielhelm, Jr.
FL Bar No.: 889679
rthielhelm@bakerlaw.com
Yameel L. Mercado Robles
FL Bar No.: 1003897
ymercadorobles@bakerlaw.com
**Baker & Hostetler LLP**
200 S. Orange Ave., Suite 2300

19

Orlando, FL 32801-3432
(407) 649-4070

*Attorneys for Applicants*